5:04cv415-RH/wcs

# PLAINTIFF DAVID L. JONES LIST OF PROPOSED EXHIBITS
# FOR CIVIL ACTION AGAINST THE DEPARTMENT OF THE NAVY

1.  Plaintiff David L. Jones, Formal EEO Complaint of Discrimination, Agency
    Docket No. 02-61331-004, April 17, 2002.

2.  Plaintiff David L. Jones, Request to Amend Complaint, Pursuant to C.F.R.
    1614.108 (e) " Like or Related Issues Claims " Agency Docket No. DON-2-
    61331-004, July 18, 2002.

3.  EEO Counselors Report on David L. Jones, April 19, 2002.

4.  Deputy Equal Employment Opportunity Officer, Notice of Receipt of
    Discrimination Complaint of David L. Jones vs. Gordon R. England, Secretary of
    the Navy, Docket No. DON 02-61331-004, April 17, 2004.

5.  Plaintiff Sammy D. Barnes, et al vs. John H. Dalton, Secretary of the Navy,
    Defendant, No. 94-50372-LAC, Notice of Video Tape Depositions, March 21,
    1996, Class Action Complaint.

6.  Plaintiff Sammy D. Barnes, et al vs. John H. Dalton, Secretary of the Navy,
    Defendant, No. 94-50372-LAC, Order of Partial Dismissal, July 18, 1996.

7.  EEOC/OFO Denial of Request for Reconsideration and Right to File a Civil
    Action, September 9, 2004.

OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PANAMA CITY. FLA.

04 DEC -7 AM 11: 48

FILED

EXHIBIT "F"

## FORMAL COMPLAINT OF DISCRIMINATION

**(Agency Use only)**
**AGENCY DOCKET NO.**
02-61331-004

---

**1. Name of Complainant**
(Last, First, MI)

JONES, DAVID L.

**2. Are you being represented?**

☑ YES (If so, complete 2a-2c below)

☐ NO (Continue with Question No. 3)

---

**1a. Address (incl: City, State, Zip)**

717 WILLIAMS AVE.
PANAMA CITY, FLA. 32401

**2a. Name of Representative**

JOSEPH V. KAPLAN

**2b. Address (incl: City, State, Zip)**
1090 VERMONT AVENUE, N.W. SUITE 500
WASHINGTON, DISTRICT OF COLUMBIA 2005

---

**1b. Home Telephone (incl: area code)**

850 - 769 - 7095

**2c. Work Telephone (incl: area code)**

Comm: (810) 235 - 5116

DSN:

---

**3. Are you now working for the Department of the Navy?**

☑ YES (Complete 3a-3b)

☐ NO (Continue with Question No. 4)

**3a. Name of Activity where you work**

COASTAL SYSTEMS CENTER

**3b. Street Address of your activity**
(incl: City, State, Zip)
6703 WEST HIGHWAY 98
PANAMA CITY, BEACH FLA. 32407-70 )

---

**4. Present Job Title, Series and Grade:**

ELECTRONICS TECHNICIAN 856 - GS 11/7

---

**5. Name and address of Navy Activity you believe discriminated against you**
(if different from 3a-3b) COASTAL SYSTEMS CENTER
6703 W HWY 98, PANAMA CITY BEACH FLA
32407 - 7001

---

**6. Date(s) on which most recent alleged discrimination occurred:**

Month  3          Day  16          Year  2002

## FORMAL COMPLAINT OF DISCRIMINATION

| (Agency Use only) |
| --- |
| AGENCY DOCKET NO. |
| 02-61321-004 |

**7. You believe you were discriminated against on the basis of your:**
(Check below)

RACE + AGE

| | | | |
| --- | --- | --- | --- |
| [✓] | **RACE** (If so, state your race)<br>AFRICAN AMERICIAN | [ ] | **RELIGION** (If so, state your religion) |
| [✓] | **COLOR** (If so, state your color)<br>BLACK | [ ] | **NATIONAL ORIGIN** (If so, state origin) |
| [ ] | **SEX**<br>_____ Male   _____ Female | [✓] | **AGE**<br>Date of Birth 10-26-46 |
| [ ] | **DISABILITY** (Please describe)<br>Mental<br><br>Physical | [ ] | **REPRISAL** (If so, date and description of prior protected activity) |

**8. Have you discussed your complaint with an EEO Counselor?**   [✓] YES   [ ] NO

Name of Counselor: CINDY FARR   Date of Initial EEO Contact: 03/08/02   Date of Final Interview: 04/16/02

**9. EXPLAIN SPECIFICALLY HOW YOU WERE DISCRIMINATED AGAINST**
(That is, treated differently from other employees or applicants, because of your race, color, religion, sex, national origin, age, mental or physical disability, or reprisal.)
(If your complaint involves more than one allegation, list and number each allegation separately and furnish specific, factual information in support of each.)

Allegation No. 1 (include basis(es) (See Question No. 7):

I HAVE BEEN PASSED OVER FOR PROMOTIONS FOR AT LEAST 20 YEARS. IN MARCH OF 2002, I TALKED TO MY SUPERVISOR ABOUT PROMOTION DENIALS. MY CO-WORKER, UPTON IS A WHITE MALE CAME INTO THE 802/856 SERIES FROM A LABOR POSITION WAGE GRADE MANY YEARS (APPROX 15) AFTER I DID AND HAS BEEN PROMOTED TO THE GS-12 GRADE LEVEL. I HAVE NOT HAD THE OPPORTUNITIES AS MY WHITE CO-WORKERS TO WORK ON HIGH LEVEL PROJECTS. I HAVE BEEN DENIED TOOLS TO WORK ON SPECIAL PROJECTS. WHITE CO-WORKERS HAVE BEEN GIVEN THOSE TOOLS. EMPLOYEES WHO WERE MACHINISTS, WELDERS ELECTRICIANS AND OTHER CRAFTSMAN HAVE BEEN PROMOTED TO THE GS-12 GRADE LEVEL ABOVE ME NOW THAT I HAVE RETIREMENT ELIGIBLES. MY AGE IS BEING HELD AGAINST ME.

(Use additional sheets if necessary)

| FORMAL COMPLAINT OF DISCRIMINATION | (Agency Use only) AGENCY DOCKET NO. |
|---|---|
| | Q2-41831-004 |

**10. WHAT SPECIFIC CORRECTIVE ACTION DO YOU WANT TAKEN ON YOUR COMPLAINT**
(If your complaint involves more than one allegation, state corrective action desired for each separate allegation.) I FEEL THAT Promotions have Been Given to others that I should have Received, GS/12 And Compensation Pay.

**11. WITH REGARD TO THE ALLEGATIONS DESCRIBED IN Question No. 9, HAVE YOU:**

☐ Filed a grievance through the negotiated grievance procedure? If so, date filed. _____

☐ Filed an appeal with the Merit Systems Protection Board? If so, date filed. _____

☐ Filed a civil action in U.S. District Court? If so, date filed. _____

| 12. Signature of Complainant | 13. Date Signed |
|---|---|
| *[signature]* | 04/17/02 |

| 14a. Received by: *[signature]* (Signature) | 15. Complaint was: |
|---|---|
| Irma C. Burden | ☐ Mailed: |
| b. Typed Name & Title Deputy Equal Employment Opportunity Officer | Postmark date _____ |
| c. Activity Name and Address: 6703 W HWY 98 Panama C. 'ty, FL 32407-7001 | Received date _____ |
| d. Telephone (incl: area code) Comm: (850) 234-4710 DSN: 426-4710 | ☑ Hand Delivered: Date 4-17-02 |

DEPARTMENT OF THE NAVY
COASTAL SYSTEMS STATION DAHLGREN DIVISION
DEPUTY EQUAL EMPLOYMENT OPPORTUNITY OFFICER
NAVAL SURFACE WARFARE CENTER
6703 WEST HIGHWAY 98
PANAMA CITY, FLORIDA 32407-7001

In the Matter of:                    )
                                     )
David L. Jones,                      )
     Complainant,                    )
                                     )
v.                                   )
                                     )
                                     )   AGENCY CASE NO. DON:61331-004
Gordon R. England,                   )
Secretary of the Navy,               )
                                     )   DATE: July 18, 2002
     Agency.                         )
_____)

## COMPLAINANT'S REQUEST THAT THE DON EEOC OFFICE PURSUANT TO 29 C.F.R. 1614.108(e) GRANT COMPLAINANT " LIKE OR RELATED ISSUE CLAIMS APPROVED

COMES NOW the Complainant, David L. Jones and request that the Agency grants his amended issues in accordance with 29 CFR Section 1614.108(e).

This is to officially notify the Agency that the Complainant is requesting to have his current Performance Evaluation be added as an issue before the DOD CPMS/OCI investigator in the form of Reprisal and Retaliation in promotions from July 20, 1971 to the present. See EEO Counselors Report exhibit C.

The Complainant has requested the Agency EEO office to approved Disparity in Treatment in Quality Salary Increases from July 20, 1971 to the present.

The Complainant is requesting that Offical Training be added as an issue in this complaint. The Complainant is also requesting that Sex (Male) be added as an issue as compared with another female co-worker.  The Complainant is requesting that Job Assignments be added as an issue when compared with other co-workers.

The Complainant is requesting that the Agency authorized the DOD EEO investigator to review any violations of 29 USC 201, Promotion and Internal Placement of the Office of Personnel Management rules and regulations.  This should all GS-09 thur GS-12 Electronic Technicians Training and Promotions patterns.  The Complainant is requesting that an issue of hostile working environment and whether the Agency is taking reprisal actions against him for filing union grievance on other related issues prior to this complaint.

The Complainant is requesting some disciplinary action if it has been found that the Agency Supervisors and Human Resource Office made any errors in assigning Promotions and Quality Salary Increases. The Complainant also requests that the issue of agency Credibility be added as an issue. Request new issues are approved.

Respectfully submitted this 18th day of July 2002.

ANDREW L. COLVIN
CO-REPRESENTATIVE
908 WILSON AVENUE
PANAMA CITY, FLORIDA 32402
904) 283-4285
FAX (904) 784-9387

225

<u>EEO COUNSELOR'S REPORT ON DAVID JONES</u>

I.   REQUIRED ELEMENTS

A. AGGRIEVED PERSON

Name:                    David Jones

Job Title/Series/Grade:  Electronics Technician, GS-0856-11

Place of Employment:     Coastal Systems Station,
                         Simulation Engineering Branch, Code E25
                         (this was branch he was in at time of alleged incident,
                           this changed under Reorganization effective April 1, 2002
                           to Systems Modeling and Simulation Branch, Code A84)

Work Phone No.:          (850) 235-5116

Home Phone No:           (850) 769-7095

Home Address:            717 Williams Avenue
                         Panama City, Florida 32401

Representative:          Joseph V. Kaplan, Attorney
                         1090 Vermont Avenue, N.W. Suite 500
                         Washington, D.C. 20005
                         (202) 789-0100

B. CHRONOLOGY OF EEO COUNSELING

Date of Initial Contact:   Mar 08, 2002

Date of Initial Interview: Mar 12, 2002

Date of Alleged
Discriminatory Event:      Mar 08, 2002

45th Day After Event:      Apr 14, 2002

Reason for delayed contact beyond 45 days, if applicable:  Not applicable

Date Counseling Report Requested:  Apr 17, 2002

Date Counseling Report Submitted:  Apr 19, 2002

B.  BASIS (ES) FOR ALLEGED DISCRIMINATION

    1) [ X ] Race (Specify) _____ African-American_____
    2) [    ] Color (Specify) _____
    3) [    ] National Origin (Specify) _____
    4) [    ] Sex.(Specify) _____
    5) [ X ] Age (Date of Birth) _____ 10-26-46_____
    6) [    ] Mental Disability (Specify) _____
    7) [    ] Physical Disability (Specify)
    8) [    ] Religion (Specify) _____
    9) [    ] Reprisal (Identify earlier event and/or opposed practice, give date)

C.  PRECISE DESCRIPTION OF THE ISSUE(S) COUNSELED

1.  The complainant, David Jones, spoke with the Division Head of Code E20, Test & Evaluation, Modeling and Simulation Division, John Auzins (Caucasian), on March 8, 2002 about how other Electronics Technicians had become a GS 12 within that division by going through a process of promotion at a faster rate other than the promotion process that the complainant had gone through at a slower rate, and that he was at the GS 11 level even though he had been hired in before the other Electronics Technicians and had acquired the position of Electronics Technician before they had. John Auzins told the complainant that he should contact the EEO office.  The complainant alleges he has been discriminated against based on race (African-American)  and age (DOB 10-26-46, age 55) in that the Electronics Technicians that have been promoted to the GS 12 level are not African-American and are younger than he is.  Complainant also alleges that there has been a pattern and practice at Coastal Systems Station to promote Electronics Technicians (Series 856) and Engineering Technicians (Series 802) Technicians that are not African-American while the African-American Technicians have not obtained a promotion at the same rate.

D.  REMEDY REQUESTED

1.  To be promoted to GS12.

2.  Backpay from the time the Division first started using the promotion process that promoted Technicians that were not African-Americans to a GS 12 level.

E.  EEO COUNSELOR'S NOTICE OF RIGHTS AND RESPONSIBILITIES – THE COUNSELOR ADVISED THE AGGRIEVED PERSON IN WRITING OF THE RIGHTS AND RESPONSIBILITIES CONTAINED IN THE NOTICE OF RIGHTS AND RESPONSIBILITIES.

II.    SUMMARY OF INFORMAL RESOLUTION ATTEMPTS

A.  IF THE COUNSELOR ATTEMPTED RESOLUTION

1.  Personal Contacts

    a.  David Jones               CSS                Simulation Engin. Branch
        Electronics Technician    Code E25        (now Systems Modeling &
                                                  Simulation Branch, A84)
                                                  (w) (850) 235-5116

The following is based on information provided by the complainant, David Jones (African-American). Jones was hired at Coastal Systems Station (CSS) in 1971. Since he began working at CSS he has always held some type of Electronics or Engineering position, which is considered the Technical side at CSS. At the time of the initial interview on March 12, 2002 Jones was employed as an Electronics Technician, GS-856-11 in the Simulation Engineering Branch, Code E25. A copy was obtained of Jones' SF50 which shows his last promotion to a GS 11 level in March 1998, and of his Position Description. (See Exhibit A). Jones said that he began at CSS as an Engineering Aid, GS-2, and has always been promoted through the positions that he has held in Electronics or Engineering. He stated that other Electronics Technicians have gone through another promotion process. Some of them start out in a Wage Grade position in the Support side at CSS as a rigger, welder or laborer. They then come over to the Electronics positions on the Technical side without any prior experience in the Technical side, and they have been promoted at a faster rate than he has. Jones said that there has been a pattern and practice for promoting employees that are not African-American and are primarily Caucasian into positions on the Technical side. Since Jones began at CSS and up to the current time he has been the only African-American Electronics Technician. Jones said that one year and six months after he received a promotion to GS-11 that an African-American, Isaac Brown, was placed in a Technicians position as a GS-11 from the Wage Grade side. Data was gathered by race and grade of the Electronics and Engineering Technicians. (See Exhibit B). Jones said that his work was always scrutinized so that he was performing at least at the level stated in his Position Description. He has had to methodically go through the steps on the Technical side in order to achieve promotions. Jones mentioned several employees that had held Wage Grade or non-technical positions and had been promoted to Technicians and advanced without being required to do the work or hold the positions on the Technical side before they advanced. On the other hand, Jones said that at one point in his career in 1977 he held a position as an Engineering Technician. They determined he was doing work as an Engineering Draftsman so he was demoted in title and detailed to work as an Electronics Technician so that he could have the experience doing the work before he was actually promoted to an Electronics Technician. He specifically discussed three employees that were hired much later after him that had later obtained Technician positions and had been promoted at a faster rate than he was. The three employees were Ignacio Galarza (Hispanic, age 44), Michael McCants (Caucasian, age 53), and Ann Naylor (Caucasian, age 45). Galarza and McCants had held Wage Grade positions prior to becoming Electronics Technicians and Naylor had worked at one point as a Secretary in his division. The CSS employment history of these employees and the employment history of Jones was obtained from their Official Personnel Folders and set out in a document for comparison. (See Exhibit C). The Position Description for these three employees is attached. (See Exhibits D, E and F).

At the time of the initial interview, Jones' first-level supervisor was Scott Dorsch (Caucasian) Branch Head. Dorsch was not in the office on March 8, 2002 when Jones went to discuss these issues so Jones went to his second-level supervisor at that time, John Auzins (Caucasian), Division Head of Code E20, Test & Evaluation, Modeling and Simulation Division. Jones explained to Auzins that there had been a different promotion process used for some of the employees and Jones showed Auzins personnel documents that he had regarding his own promotions. Jones told Auzins that he wanted to go through the chain of command to look into the different treatments of employees. Auzins later told Jones to go ahead and file an EEO complaint.

Jones alleges that he has been discriminated against based on race (African-American) and age (DOB 10-26-46, age 55) in that the Electronics Technicians that have been promoted to the GS 12 level are not African-American and are younger than he is. Data was also obtained on the age, race, date of arrival at CSS, and last date of promotion of the Electronics Technicians. (See Exhibit G). Jones also alleges that there has been a pattern and practice at Coastal Systems Station to promote Electronics Technicians (Series 856) and Engineering Technicians (Series 802) that are not African-American at a faster rate and by a different process than the one that he had to go through as the only African-American Electronics Technician.

Jones was aware that the Deputy Equal Employment Opportunity Officer, Irma Burden (African-American), had met with Captain Fred Shutt (Caucasian), the Human Resources Director, Richard Fowler (Caucasian), and the Executive Director, David Skinner (Caucasian), on February 28, 2002 regarding the fact that there were no Technicians at the GS12 level that were African-American. She was informed that in order to be considered for a promotion from a GS11 to GS12 that the Technicians that were seeking that promotion (all African-American) would have to have a desk audit. It had been explained that this policy requiring a desk audit for those seeking a promotion to GS12 had been set up after a settlement between CSS and the union in 1999 regarding overtime pay to GS12 Technicians. Data was obtained concerning any Technician that had been promoted to the GS12 level since the 1999 settlement when the policy requiring desk audits went into effect. (See Exhibit H).

Jones believes that at this point in time that he should not have to have a desk audit or present information regarding the details of his work. He said that his personnel file shows the years of experience and positions that he has held and that he had done work at a GS12 level when others did not even hold a position as a Technician or were at a lower level, yet they were promoted at a faster rate and some of them are at the GS12 level. Jones said that when Galarza testified during the union complaint that the work that he said he was doing as a 12 is the same work that is in the Position Description that Jones had as a GS6. Jones provided a copy of his Position Description at the GS 6 level. (See Exhibit I). Jones said that he had received training in Electronics on weapons in the Army and had also attended Gulf Coast Community College so that he also had formalized training.

The reorganization that became effective on April 1, 2002 moved Jones from Code E25 to Code A84, Systems Modeling & Simulation Branch. His first level supervisor is now John Brady and his second level supervisor is Paul Pettofrezzo.

|   | b. John Auzins | CSS | Test & Evaluation, Modeling and |
|---|---|---|---|
|   | Division Head | Code E20 | Simulation Division |
|   |   |   | (now Test & Evaluation Division) |
|   |   | ~ | (850) 235-5057 |

John Auzins (Caucasian) met with me on March 20, 2002. He stated that he had been the Division Head for about one year and had become familiar with Jones work for about nine months. Roger Leete (Caucasian) had been the Division Head over Jones before that and Dennis Wilson (Caucasian, now retired) also supervised Jones. Jones came to Auzins regarding what he saw as the other track that promotes employees into a Technician GS 12. Auzins said that he had not been familiar with it. Jones explained to him that riggers, welders and employees that had worked in the mailroom had worked up and crossed over to the Technical side and were promoted to a GS 12. Jones showed Auzins the Position Descriptions that he had. Auzins' suggestions to him were to identify the jobs he was on, the complexity of his job, and his performance ratings and to see Irma Burden, the Deputy EEO Officer.

Jones had told Auzins that most of the employees promoted on this other track were white. He said that Jones was more concerned that it was the other track that could get them to a promotion, but that Jones didn't want to take anything away from these employees. Auzins thought that this had to be looked at on a case by case basis. He said that some of those employees may have gone through upward mobility programs and come from the Shops and gone through a rapid accession as Technicians but that he wasn't familiar enough with this track to give any facts on it. When asked if there was any resolution he had to offer, Auzins said the only resolution he might suggest would be for the EEO Office to gather information showing how the other individuals that Jones had said had been promoted on the other track had gone that route and to provide Jones with that information.

Auzins said that when he looks at whether an employee should be a 12 he asks: 1) is there room or a need, and 2) is the work the employee is doing in his Position Description or outside of it. When asked what he knew about desk audits, Auzins stated that desk audits began to come up after the union settlement.

|   | c. | Gwen Hardee | CSS | Human Resources Division |
|---|---|---|---|---|
|   |   | Personnel Specialist | Code XPP | (850) 234-4712 |

Gwen Hardee (Caucasian) met with me on March 20, 2002. Hardee is a Personnel Specialist. When asked whether a desk audit had been done on Robert Adkins (Caucasian), the only Technician that had been promoted to GS12 after 1999, she indicated that it had not. She stated that Robert Adkins' supervisor should have information regarding the promotion.

|   | c. | Patrick Spring | CSS | Amphibious Craft & |
|---|---|---|---|---|
|   |   | Branch Head | Code A41 | USMC Branch |
|   |   |   |   | (850) 235-5621 |

Patrick Spring (Caucasian) met with me on March 20, 2002.   Spring said that desk audits were not required for a Technician to get promoted to GS 12. He said that he was initially told that a Technician couldn't become a GS12 and the normal working level is an 11. He stated that he had been told by the Division Head for his Code, Bob King, that the Department Head for Code A, Jim Thompsen, said the requirement for a promotion to GS12 in A Department was whether the employee had knowledge unique enough to warrant the individual being the only source of information.  He stated that there had to be something unique about their skills and  not a lot of GS12s are Technicians.  Spring said that Adkins had expertise in the Hovercraft propulsion system, and he was recognized by the fleet as an expert.  He said that people come to Adkins for work in that area.  Spring stated that he prepared a memorandum regarding his recommendation that Robert Adkins be promoted to a GS12.  He provided this memorandum to personnel and to the Department Head.  (See Exhibit J).  Adkins was promoted to GS12 on November 19, 2000. (See Exhibit K).

|     |                         |          |                          |
| --- | ----------------------- | -------- | ------------------------ |
| d.  | Sandra Ringer           | CSS      | Human Resources Division |
|     | Classification Specialist | Code XPP | (850) 235-5532          |

Sandra Ringer (Caucasian) met with me on March 20, 2002.    Ringer is the Classification Specialist in the Human Resources Office and has held that position at CSS since May 2001. She provided information on how a Technician GS11 can be promoted to the GS-12 level.  She explained that a Technician is a journeyman and can only work up to the GS11 level.  She said that the classification standard of a GS12 Technician is actually the same standard used by the Office of Personnel Management for the GS12 Professional Engineer.  She said that a Technician must have the ability to discuss and obtain information concerning their understanding of controversial or little known theories and techniques.  Ringer provided a copy of the classification standards used for a GS11 Electronics and Engineering Technician and GS12 Engineering and Electronics Technician. (See Exhibits L, M and N).  She stated that when a supervisor wants to recommend a Technician to be promoted to a GS12 that they are to come to her.

|     |                      |          |                          |
| --- | -------------------- | -------- | ------------------------ |
| e.  | Irma Burden          | CSS      | Human Resources Division |
|     | Deputy EEO Officer   | Code XPP | (850) 234-4710           |

Irma Burden (African-American), the Deputy EEO Officer met with me on March 25, 2002. She said that she had had a brief conversation with Jones' Department Head, Steve Segrest.  She stated that Segrest had indicated that if Jones had done work at the GS12 level that he would be promoted to a GS12.

|     |                  |        |                        |
| --- | ---------------- | ------ | ---------------------- |
| f.  | Steve Segrest    | CSS    | Test & Evaluation Dept. |
|     | Department Head  | Code E | (now Maritime Systems   |
|     |                  |        | Dept.)                  |
|     |                  |        | (850) 234-4676          |

Steve Segrest (Caucasian) spoke with me by phone on March 25, 2002 and indicated that he would have to look at Jones duties and responsibilities to determine if he had actually been doing work at the GS12 level. He would also need to know what types of schools and training that he

011

has gone to. He was under the impression that Jones hadn't taken the initiative to go to school or get any training. Segrest said that if Jones was doing 12 level work then he would be promoted. He said that we could meet after the information was gathered regarding Jones duties and responsibilities.

| g. | Richard Fowler | CSS | Human Resources Division |
|---|---|---|---|
| | Human Resources Director | Code XPP | (850) 234-4702 |

Richard Fowler (Caucasian) met with me on March 26, 2002. Fowler explained that prior to the settlement in 1999 with the union that a manager had to simply certify that an employee was doing the job in order to get them promoted to GS12. Dean Richards (Caucasian) was the Classification Specialist during that time and he retired in December 2000. If a manager would come to Richards he would advise them that it was difficult to get to GS12 from GS11 but the Supervisor still had the authority to promote. The personnel office did not police the promotions at that time. Fowler said that managers would promote employees to GS12 even though they were not performing at that level just to get them promoted.

The union filed a complaint regarding the entitlement of GS12s to overtime, which was settled in 1999. Through the testimony that was taken during the investigation it was found out that the Technicians weren't performing at the level of the Classification Standards. Nothing surfaced that the employees were being treated in a discriminatory manner, but they found that the employees needed to be reclassified and their grade levels lowered. It was considered what to do because there was a large number of employees that would be affected by this. It was decided by the Executive Director, David Skinner, that they wouldn't reclassify anyone but from that point on no one could be promoted to a GS12 without justification. This could mean a desk audit.

Fowler had thought that a desk audit had been done on Robert Adkins prior to his receiving a promotion to GS12. He said if it hadn't then there would have had to have been an Evaluation Statement, something in his Position Description that would explain his unique expertise. A copy of Adkins' Position Description is attached. (See Exhibit K).

Fowler said that supervisors still have classification authority but that personnel, which is now the Classification Specialist Sandra Ringer, has to police it when a request comes in to promote to GS12. She has to look at whether that person is recognized in the industry as an expert. He said the GS12 Technician is a quasi-professional position. If the employee is not recognized in the industry as an expert then an audit has to be done of the position to look at whether their work is consistent with classification standards for a GS12.

He stated that a request by management for a GS12 must be for either one of two reasons. One reason would be because of additional duties and responsibilities. The example he gave is of a Technician who has to travel around the world during the Gulf War and acquires skills as a result of this. This would be promotion by accretion. The second reason would be a promotion by a position that is created that is competed for.

Fowler indicated that if Ringer determined that an employee did not qualify for a GS12 that it was still possible that the employee would receive a GS12 if the supervisor was aggressive and fought hard for the employee because the supervisor still has classification authority.

Fowler didn't know the specifics on any employees that had become a Technician by coming from a Wage Grade position but he thought that some had received formalized education. He indicated that Galarza and McCants were both considered aggressive and would do whatever you asked them to. He said they each had a good attitude.

h.   Steve Segrest            CSS             Test & Evaluation Dept.
     Department Head          Code E          (now Maritime Systems
                                              Dept.)
                                              (850) 234-4676

Steve Segrest met with me on April 4, 2002. At the request of Segrest, John Auzins was also present at the meeting. The information that had been obtained regarding three of the employees that Jones had referred to as shown in Exhibit C was presented to Segrest and Auzins for discussion. They were asked to provide information on how the three employees had obtained their positions. Segrest said that the good Wage Grade workers that had worked in his shop had been placed in other positions. He said that it may not seem fair but they had competed for the positions.

Segrest and Auzins both believed that Galarza and McCants worked at high levels as Technicians and performed complex tasks. Auzins said that Jones always seemed to be with a Senior Technician when he did the work. He said Jones became a GS11 while he worked for Roger Leete and that his current supervisor, Scott Dorsch, could provide information on the work he did. He stated that the complexity of the work an employee does may be similar but the role that you play such as whether you are doing the work yourself or assisting others may be different.

Auzins and Segrest thought that Jones worked hard. Auzins said Jones hadn't been aggressive in getting jobs, and that he had to have jobs fed to him. He said that someone else was giving Jones the guidance in the work he did. He said that a GS11 may be an expert but they take the lead from another person.

Copies of the training documents that Jones had provided were shown to Segrest and Auzins. (See Exhibits O). Segrest said he couldn't tell anything just by looking at them as to what type of training that they were. He stated that for all he knew they were home correspondence courses.

They were asked about other Electronics Technicians at the GS12 level in Code E. (See Exhibit G). During this time in the interview as this information was being provided, Segrest indicated that he needed to attend another meeting and the interview was continued in another room with Auzins. This is some of what was said about the other GS12 Electronic Technicians. George Betz had experience in the Navy with the hovercraft and was the Liaison Manager at Eglin Air Force Base. He had on his own initiative gotten support and approvals to look at the feasibility of LCAC by using the Gatling Gun. They said he deals at a high level. Jesse Dickey is

8

involved with signature testing and Magnetic/Pressure Testing. He gathers information and passes it onto Engineers.

Auzins provided information on the two Electronic Technicians, James Infinger and Gene Pippin, from Code E that are at the same grade level as Jones. (See Exhibit G). James Infinger was Wage Grade at one time. He is excellent with electronics and works on a lot of classified information. Gene Pippin works on his own and supports LCAC. He takes complex circuit boards and diagnoses the failure. He then devises a program to override the failure.

Auzins thought that Jones Position Description reflects the differences in leadership quality. He said he would need to take the lead and not request assistance every step of the way. During the interview with Segrest he had indicated that they could not make a determination whether Jones was performing as a GS12 level unless he were to look at the specific tasks that Jones performed. Auzins suggested that the information be obtained from Dorsch.

|   |   |   |   |
|---|---|---|---|
| i. | Scott Dorsch | CSS | Simulation Engin. Branch |
|    | Branch Head  | Code E25 | (now Systems Modeling & |
|    |              |          | Simulation Branch, A84) |
|    |              |          | (850) 235-5137 |

Scott Dorsch (Caucasian) met with me on April 8, 2002. John Auzins was also present at the meeting per his request to be able to hear the information at the same time regarding Jones duties and level of work. Dorsch explained that since 1998 that Jones and others were tasked to support the facility. He said this involved working with cables, internet, and audio-visual. Jones was doing the work and Mike McCants was the lead. McCants was the Lead Technician when Dorsch began as Branch Head in 1994. Dorsch stated that McCants coordinates the work and everyone comes to him.

Dorsch stated that Jones is working at the GS11 level. Dorsch said that in order for someone to go from GS11 to GS12 that it would require someone that looks for more responsibility and is more active in pursuing things.

In regards to the training that the Technicians receive Dorsch said that McCants will have researched the area and come to him and say he wants to take it. He said that Jones will ask him and then he will have to ask Jones to follow up. He said that he thought that McCants had gotten certified in Fiber Optics. He thought he had suggested to Jones that he take a fiber optics course. When shown Jones certificate in Fiber Optics training, Exhibit O-7, he said he wasn't familiar with it and it didn't mean that Jones was certified in Fiber Optics. He said that he thought that Jones was taking basic and low level courses on things that he could learn on the job or should already know. He said that consideration has to be given to the courses because it can cost $2000 to $3000 to attend one course.

Dorsch said that he has told Jones during performance appraisals that he needs to show initiative. He said that he needs to go out and do things. A copy of Jones Performance Appraisal for 2000 and 2001 are attached. (See Exhibits P and Q). Dorsch said that Jones has shown initiative during the last two weeks in a way that he hasn't seen before in the work he is doing tearing down wiring and coordinating the work in one of the buildings. He said that he would have to

see more of this on a consistent level and in actually creating things rather than tearing them down before he could see him showing GS12 level work.

It was indicated that Roger Leete would be able to provide information on Jones work prior to Dorsch. Auzins also suggested that Michael McCants, the Lead Technician who works with Jones, be interviewed.

| i. | Roger Leete | CSS | Test & Evaluation, Modeling |
|---|---|---|---|
| | Department Manager | Code E20 | and Simulation Division |
| | | | (850) 235-5137 |

Roger Leete (Caucasian) met with me on April 9, 2002. Leete said that he worked directly as the Branch Head over Jones and McCants from 1992 to 1998. He stated that McCants was the Senior Technician when Leete came to that branch in 1992. He said that McCants was always at a higher grade level and he would take time to show Jones what was being done or how to do it. He explained that McCants did wiring, cable running, circuit board assembly, assembled electronic components, supported testing of equipment and maintenance and upkeep of electronics in the building.

Leete is the one that promoted Jones to GS11. He said that Jones would tell you he didn't need any kind of leadership positions. He stated that Jones does good work but the skill level is not the same. He said that in larger wiring projects that Jones' work would need to be inspected and checked and his work was more apt for something to be reworked   He said that Jones never brought up to him about any promotions.

As the branch head he knew that McCants and Jones each went to some form year but it wasn't necessarily the same one. He left it up to the individual. F took Fiber Optics training. This was an area they were trained in when the b kind of work.

There was a wiring project at Quantico that lasted four to five months. McC would be doing the same thing on the project but McCants was the interface and would leave a list for Jones. Jones would go down the list and work th

Leete said the leadership role for a Technician was at GS12 level. Jones is Technician and GS11 is appropriate for him. A GS12 must demonstrate cl personality that differentiates them.

He stated that Jones never expressed an interest for those kinds of opportu hold of them when they're there. He said that if Jones wanted to progress . on responsibility for projects within the group by leading other people in the group. He ..... ... would need a higher level of quality of work  so that there was less rework. He would need to show a variety of skills. He thought that McCants had passed a soldering certification and that Ann Naylor had also but that Jones hadn't. Leete said that McCants will go after work and find work. Jones isn't aggressive in that manner but he'll do a good job. After the meeting with Leete, a copy of the recommendation that was given by Lette for Jones to be promoted to GS10

and the statements regarding Jones' work during that time was found in Jones' OPF but was not presented to Leete for comment. (See Exhibit R).

Effective with the reorganization that took place on April 1, 2002 Leete is to be the Head of the Coastal & Maritime Security Program Office, EO6.

| j. | Michael McCants | CSS | Simulation Engin. Branch |
|---|---|---|---|
| | Electronics Technician | Code E25 | (now Systems Modeling & |
| | | | Simulation Branch, A84) |
| | | | (850) 235-5188 |

Michael McCants (Caucasian) met with me on April 10, 2002. Jones had agreed to an extension of the counseling period for five days in order to interview McCants and Clint Mayo. McCants said that both Jones and he had received Electronics Training while in the military. Jones received his training in the Army and he had to work with weapons. McCants training was in the Marines. McCants said that their Code allows them to attend a school every year and that both he and Jones have attended several schools. He stated that he listens to Jones as much as Jones listens to him. He said their responsibility is to provide support for over sixty people. Jones will do whatever you ask him to do and he is not aggressive as far as it being a negative thing. McCants said that he has worked as the Lead so everyone comes to him as the Lead.

When Jones worked for Clint Mayo (African-American), McCants said that Jones wasn't getting promoted. He said that he went to Mayo because he thought that Jones should be promoted. Mayo told him that Jones didn't do work as a Lead Technician. McCants asked Mayo to give Jones an opportunity to work as the Lead Technician on the P9 project. Jones worked on the entire project as the Lead Technician and McCants said he was really motivated. McCants said he took instruction from Jones on the project. He stated that it worked the first time they turned it on. It was Jones success on this project that led to his receiving the promotion to GS9 from Clint Mayo. McCants said that when Jones was a GS6 he was doing GS 12 level work all of the time. McCants said there was a time when Jones was more motivated when he thought he had opportunities.

McCants said that both Jones and he can do soldering. He thought that Jones had probably been trained for this in the Marines. Both have attended a school on base for this. McCants stated that Jones does not have more rework than anyone else. They will check each other's work back and forth and that is a good thing to do.

McCants explained that Carl Williams was a retired annuitant a few years ago. When he left, it opened up a GS12 position in the Code he was in. Jones was in Clint Mayo's Code and there was no GS12 position in it. That's when McCants got promoted to the GS12 level.

Jones has built interfaces, done soldering, integration of systems and understands Ohm's law, which McCants believes puts him at the GS12 level. He said that Jones and he work at the same level. They both have to do the same thing. If he's gone, Jones has to take on the load. McCants believes that Jones has gone all these years without recognition of the level of his work. He said that the level of the work required recently has decreased but through no fault of their

own and only because of the work that is being requested from them but that Jones has performed GS12 level work throughout the years. McCants said that Jones was doing GS12 level work when he was moved into McCants' Code.

At one point Jones was teaching students that were studying to be Engineers how to solder and wirewrap when they were working here. McCants said that a lot of things are self taught that they do and then they go to school just to have the actual certification even though they've learned it on their own.

When they worked on the project at Quantico McCants would go for a few weeks and then Jones would go for a few weeks. They were each working alone and doing the same work.

| k. | Clint Mayo | CSS | Coastal Initiatives Office |
|----|-----------|-----|---------------------------|
|    | Manager   | Code DPC | (850) 234-4447 |

Clint Mayo (African-American) met with me on April 12, 2002. He said that he worked as the Branch Head for the Assimilations Branch from 1988-1993. Mayo said that he thought that Jones had not been given a lot of opportunity to do his work. Mayo explained that since it was a matrix organization during that time that people would "body shop". It was the project manager that would select the people to work on his team. If they hadn't worked with someone then they wouldn't get selected as often.

He said that when Jones worked in his Code that people didn't want to give him the work. Mayo was told that the quality of Jones work wasn't as good, but Mayo thought that the quality of Jones' work was good. Jones would work on whatever was given to him. Jones was paired with McCants and this started providing him some jobs. He said that Jones might get a smaller piece of the job but that it all had to work together.

Mayo said that McCants was a strong proponent for Jones getting work and for him getting a promotion. There was a combination of things that Jones did during this time, which led to him recommending Jones' promotion to GS9. Mayo thought he had written up something that would be in Jones' personnel folder regarding this promotion. A later check in the OPF did not show a copy of a written recommendation.

| l. | John Auzins | CSS | Test & Evaluation, Modeling and |
|----|------------|-----|--------------------------------|
|    | Division Head | Code E20 | Simulation Division |
|    |            |     | (now Test & Evaluation Division) |
|    |            |     | (850) 235-5057 |

John Auzins was phoned on April 15, 2002 to provide him with information obtained from McCants and Mayo to seek any resolution before the final interview was to be held with Jones. Auzins said that Scott Dorsch was Jones' current supervisor and was familiar with the work he did as his supervisor now, and Dorsch had already indicated the level of Jones' work. He indicated that McCants view of Jones work was as cohorts and could be different. He offered no resolution.

| m. | Irma Burden | CSS | Human Resources Division |
| --- | --- | --- | --- |
| | Deputy EEO Officer | Code XPP | (850) 234-4710 |

Irma Burden met with me on April 16, 2002 to provide information in regards to the 2000 promotion of Isaac Brown (African-American) to an Engineering Technician GS11 position from a Wage Grade position as a Welder. Burden said that Brown contacted her in July 2000. He had applied for the Engineering Technician position and the person selected for the position was a Caucasian contractor. Brown had been performing the tasks for that position. Burden had met with the Captain at that time, Captain Duane Covert, and the Executive Director, David Skinner. No informal EEO process was begun. The matter was resolved by placing both Brown and the other employee in an Engineering Technician GS11 position.

2. Documents Reviewed

| Exhibit A | SF50 and Position Description at GS11 of David Jones |
| --- | --- |
| Exhibit B | Breakdown by Grade and Race of all Electronics and Engineering Techncians at CSS |
| Exhibit C | Employment History of Jones, Galarza, McCants and Naylor |
| Exhibit D | Current Position Description of Ignacio Galarza |
| Exhibit E | Current Position Description of Michael McCants |
| Exhibit F | Current Position Description of Ann Naylor |
| Exhibit G | Data on all GS12 and GS11 Electronic Technicians at CSS |
| Exhibit H | Technicians Promoted to GS12 Since 1999 |
| Exhibit I | SF50 and Position Description at GS6 of David Jones |
| Exhibit J | Memorandum regarding promotion of Robert Adkins |
| Exhibit K | SF50 and Position Description at GS12 of Robert Adkins |
| Exhibit L | OPM Classification Standard for GS11 Electronics Technician |
| Exhibit M | OPM Classification Standard for GS11 Engineering Technician |
| Exhibit N | OPM Classification Standard for GS12 Electronics and Engineering Technician |
| Exhibit O | Documents of Training Courses Taken by David Jones |

13

Exhibit P      2000 Performance Appraisal for David Jones

Exhibit Q      2001 Performance Appraisal for David Jones

Exhibit R      Memorandum regarding Promotion of David Jones to GS10

3.  Summary of Informal Resolution Attempt

ADR was offered by the agency, CSS. The complainant, Jones, declined ADR and an inquiry
was conducted.  Scott Dorsch, the first level supervisor, stated that Jones was performing at the
GS11 level and no resolution was offered by management.


Cindy Farr                                      (850) 234-4538
EEO Counselor                                   Telephone Number


*Cindy Farr*

Signature of EEO Counselor                      6703 W Hwy 98
April 19, 2002                                  Panama City, FL 32407-7001

17



**DEPARTMENT OF THE NAVY**
COASTAL SYSTEMS STATION DAHLGREN DIVISION
NAVAL SURFACE WARFARE CENTER
6703 WEST HIGHWAY 98
PANAMA CITY FL 32407-7001

IN REPLY REFER TO:

12713
Ser PC:dj02004
April 17, 2002

From:  Deputy Equal Employment Opportunity Officer
To:    Attorney for Mr. David L. Jones

Subj:  NOTICE OF RECEIPT OF DISCRIMINATION COMPLAINT OF DAVID L. JONES
       v. GORDON R. ENGLAND, SECRETARY OF THE NAVY, DOCKET NO. DON
       02-61331-004

Ref:   (a) Your discrimination complaint of April 17, 2002

Encl:  (1) EEOC Hearing Request Form

1. This notice acknowledges receipt of reference (a) on April 17, 2002

2. As noted above, your complaint has been assigned agency docket
number DON 02-61331-004. Please include this docket number on all
future correspondence or other documents regarding this complaint.

3. If your complaint is accepted, it will be investigated. The
Department of the Navy is required to conduct a complete and fair
investigation of the complaint within 180 days of the filing of
the complaint, unless the parties agree in writing to extend the
investigation. You will receive a copy of the investigative file and
have an opportunity to request an immediate final agency decision or a
hearing before an Equal Employment Opportunity Commission (EEOC)
Administrative Judge with a final agency decision.

4. If your complaint, or any allegation contained in it, is dismissed,
you will receive a written notice advising you of your appeal rights.

5. If settlement of the complaint is reached, the terms of the
settlement will be stated, in writing, and you will be given a copy.

6. If settlement of the complaint is not reached, you have the right to
request a decision from the Secretary of the Navy, with or without a
hearing.

   a. If you request a decision with a hearing, the hearing will be
conducted by an EEOC Administrative Judge. You must **NOTIFY EEOC IN
WRITING** (enclosure 1) **WITHIN 30 CALENDAR DAYS AFTER RECEIVING THE
INVESTIGATIVE FILE,** or

   any time after 180 days have elapsed from the filing of your formal
complaint; you may request a hearing by submitting a written request,
directly to the EEOC Miami District Office by using the following:

34

Subj:  NOTICE OF RECEIPT OF DISCRIMINATION COMPLAINT OF DAVID L. JONES
       v. GORDON R. ENGLAND, SECRETARY OF THE NAVY, DOCKET NO. DON
       02-61331-004

           Equal Employment Opportunity Commission
           Miami District Office
           One Biscayne Tower
           Two South Biscayne Boulevard
           Miami, Florida 33131-1805

    With a copy to:

           Deputy EEO Officer
           Coastal Systems Station
           Code PC
           6703 West Highway 98
           Panama City, Florida 32407-7001.

    b.  If you request a decision by the Secretary of the Navy, **YOU MUST
NOTIFY ME IN WRITING WITHIN 30 CALENDAR DAYS AFTER RECEIVING THE
INVESTIGATIVE FILE,** so that this office can make the necessary
arrangements.

    c.  If, within 30 calendar days after your receipt of the
investigative file, you fail to request a final decision from the
Secretary of the Navy, with or without a hearing, a final Department of
the Navy decision will be issued.

7.  If you are dissatisfied with the final Department of the Navy
decision, you may file a notice of appeal to the EEOC Office of Federal
Operations (OFO) within 30 calendar days after receiving the final
decision.  The appeal should be submitted to the:

           Director, Office of Federal Operations
           Equal Employment Opportunity Commission
           P.O. Box 19848
           Washington, DC  20036

    a.  At the same time, you MUST furnish a copy of the appeal to the
Coastal Systems Station Equal Employment Opportunity Officer.  In or
attached to the appeal to the Commission, you must certify the date and
method by which service was made on the Department of the Navy.

    b.  You may submit a brief or statement to support your appeal to
OFO within 30 calendar days after filing the notice of appeal.  At the
same time, you must furnish a copy of the supporting brief or statement
to the Department of the Navy.

8.  Instead of an appeal to the EEOC, you may file a civil action in an
appropriate U.S. District Court within 90 calendar days after receiving
the final Department of the Navy decision or, if the Department of the
Navy has not issued a final decision on your complaint, after 180
calendar days from the date the formal complaint was filed.  If your
discrimination complaint is based on conduct that occurred prior to

Subj:   NOTICE OF RECEIPT OF DISCRIMINATION COMPLAINT OF DAVID L. JONES
        v. GORDON R. ENGLAND, SECRETARY OF THE NAVY, DOCKET NO. DON
        02-61331-004

November 21, 1991, you have 30 calendar days from your receipt of the
final Department of the Navy decision or, if a final decision has not
been issued, 180 calendar days from the date the formal complaint was
filed, in which to file a civil action in U.S. District Court. As to
any claim based on the Age Discrimination in Employment Act of 1967, as
amended (29 USC Section 633a), you MAY have up to 6 years after the
right of action first accrued regardless of whether the administrative
process is completed. See Lehman v. Nakshian, 453 U.S. 156 (1981); 29
USC Section 633a(f); and 28 USC Section 2401(a). Filing a civil action
will result in termination of administrative processing of your
discrimination complaint on the same matters raised in the civil action.

9.  If you file a civil action under Title VII of the Civil Rights Act
of 1964, as amended, or the Rehabilitation Act of 1973, as amended, and
you do not have, or are unable to obtain the services of a lawyer, you
may request the court to appoint a lawyer to represent you. In such
circumstances as the court may deem just, the court may appoint a lawyer
and may authorize the commencement of the action without the payment of
fees, costs, or security. Any such request must be made within the
above-referenced 90-calendar day time limit, or 30-calendar day time
limit, if appropriate, for filing suit and in such form and manner as
the court may require. Filing a request for an attorney does not extend
your time in which to file a civil action. Both the request and the
civil action must be filed within 90 calendar days or, if appropriate,
30 calendar days from the date you receive this decision.

10.  You are further notified that if you file a civil action, you must
name Gordon R. England, Secretary of the Navy, as the defendant. You
must include the name of the person and the official title. Failure to
name Gordon R. England, Secretary of the Navy, may result in the loss of
any judicial redress you may be entitled to.

11.  If you decide to appeal to the EEOC OFO, you will still have an
opportunity to file a civil action in a federal district court within 30
calendar days after receiving the EEOC's final decision, or 180 calendar
days after the date of your initial appeal to the Commission if the EEOC
has not rendered a final decision.

12.  If you have further questions, please contact me on (850) 234-4710.

IRMA C. BURDEN
By Direction of
Commanding Officer

041

36

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forging Notice of Receipt of Discrimination Complaint of David L. Jones. v. Gordon R. England, Secretary of Navy, DON no. 02-61331-004 was sent by registered mail on April 18, 2002 to:

>
> Joseph J. Kaplan
> 1090 Vermont Avenue NW Suite 500
> Washington, DC 20005
>
> Mr. David L. Jones
> 717 Williams Avenue
> Panama City, FL 32401

>
> IRMA C. BURDEN
> Deputy EEO Officer
> Coastal Systems Station
> 6703 West Highway 98
> Panama City, Florida 32407-7001
> (850) 234-4710
> Fax: (850) 235-5922



SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

JOSEPH J. KAPLAN
1090 VERMONT AVENUE NW
SUITE 500
WASHINGTON, DC   20005

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X                                        ☐ Agent
                                         ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7001 0360 0000 8064 2913   (EEO/SPP/dlinor)

PS Form 3811, March 2001        Domestic Return Receipt        102595-01-M-1424

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

(EEO/XPP/dlinor)

Postage        $   .57
Certified Fee      2.10
Return Receipt Fee   1.50
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees   $   4.17

Sent To
JOSEPH J. KAPLAN
Street, Apt. No.;
or PO Box No. 1090 VERMONT AVE NW STE 500
City, State, ZIP+4 WASHINGTON, DC   20005

7001 0360 0000 8064 2913

043

38

CERTIFIED MAIL
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

DAVID L. JONES
717 WILLIAMS AVENUE
PANAMA CITY, FLORIDA  32401

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) | B. Date of Delivery

DAVID L Jones | 4/11/02

C. Signature
X (signature)
☐ Agent
☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7001 0360 0000 8064 2906        (EEO/XPP/dljnor)

PS Form 3811, March 2001        Domestic Return Receipt        102595-01-M-1424

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

(EEO/XPP/dljnor)

| | |
|---|---|
| Postage | $ .57 |
| Certified Fee | 2.10 |
| Return Receipt Fee (Endorsement Required) | 1.50 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.17 |

Sent To
DAVID L. JONES
Street, Apt. No.; or PO Box No.
717 WILLIAMS AVENUE
City, State, ZIP+4
PANAMA CITY, FLORIDA  32401

7001 0360 0000 8064 2906

PS Form 3800, January 2001        See Reverse for Instructions

7001 0360 0000 806

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS. FOLD

Postmark Here

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SAMMY D.  BARNES, et al.,

        Plaintiffs

v.                                                Case No.   94-50372 LAC

JOHN H.   DALTON,
Secretary of the Navy,

        Defendant.

*WITNESS — DON 62-61331-004*

NOTICE OF VIDEO TAPE DEPOSITIONS

TO:  Sadie Moore Stewart, Esq.
    2112 Lewis Turner Blvd
    Fort Walton Beach, FL 32548

    **PLEASE TAKE NOTICE** that pursuant to Rule 30, Federal

Rules of Civil Procedure, the video-tape depositions of:

DEPONENTS:  (1)  Irvin T. Houston, 1 Apr 96, 8:00 am
             (2)  Abraham B. Boone, 1 Apr 96, 9:40 am
             (3)  Terry Flowers, 1 Apr 96, 11:20 am
             (4)  David Jones, 1 Apr 96, 1:10 pm
             (5)  Mary Jones, 1 Apr 96, 2:50 pm
             (6)  Robert Jones, 1 Apr 96, 4:30 pm
             (7)  Johnnie Williams, Jr., 1 Apr 96, 6:10 pm
             (8)  Drayton Bass, Jr., 2 Apr 96, 8:00 am
             (9)  Billie L. Humose, 2 Apr 96, 9:40 am

(10) Arthur Jeffreys, Jr., 2 Apr 96, 11:20 am
(11) Larry Foster, 2 Apr 96, 1:10 pm
(12) Thomas D. Wazlavek, 2 Apr 96, 2:50 pm
(13) Lemuel (David) Glover, 2 Apr 96, 4:30 pm
(14) Arthur Shazier, 2 Apr 96, 6:10 pm
(15) Leroy Manigualt, 3 Apr 96, 8:00 am
(16) Brenda McNair, 3 Apr 96, 9:40 am
(17) William H. Newell, Jr., 3 Apr 96, 11:20am
(18) Calvin W. Reynolds, 3 Apr 96, 1:10 pm
(19) Zeinford Scott, 3 Apr 96, 2:50 pm
(20) Gary Scott, 3 Apr 96, 4:30 pm
(21) Columbus Smith, Jr., 3 Apr 96, 6:10 pm
(22) Fred Houston, 4 Apr 96, 8:00 am
(23) Gloria D. Smith, 4 Apr 96, 9:40 am
(24) Robert L. Smith, 4 Apr 96, 11:20 am
(25) J. C. Tolson, 4 Apr 96, 1:10 pm

**DATES:**      Monday, April 1 1996 through Friday, April 5, 1996

**PLACE:**            Training & Education Building
                     Bldg.  389, Classroom C
                     Coastal Systems Station
                     W.  Highway 98
                     Panama City, Florida
                     Telephone (904) 235-5786

will be taken upon oral examination before a Court Reporter,

or a Notary Public in and for the State of Florida at Large,

or some other officer duly authorized by law to take

depositions.  These depositions are being taken for the

purpose of discovery, for use at trial, or both of the

foregoing, or for such other purposes as are permitted under

the applicable and governing rules.

2

**PLEASE TAKE NOTICE** that each deponent is directed to bring with him or her and produce for inspection and copying at the time of the deposition any and all documents, memoranda, notes, reports, diaries, things, and computer disks in his or her possession or under his or her control **related in any way to this action** including, but not limited to, the following:

(1) any personnel file, wherever maintained;

departmental file, wherever maintained;

(2) any and all EEO complaints, wherever maintained;

(3) any and all MSPB complaints, wherever maintained;

(4) any and all union grievances, wherever maintained;

(5) any and all offers of employment; applications for employment; terms conditions, and benefits of employment; employment contracts, if any, and/or amendments thereto; evaluations of job performance; job assignments; job requirements; benefits statements; insurance related documents; rates of pay; job title or job status; resumes or Forms SF-171; complaints about job or work performance; formal or informal complaints; any documents pertaining to

3

any investigation concerning or relating to each plaintiff;
and

(6) any and all documents wherever maintained,
including but not limited to, notes, papers, transcripts,
files, diaries, notebooks, computer disks, video tapes,
recordings and/or writings which relate to, pertain to, or
refer to or support any of the allegations in the complaint
in this matter.

Respectfully submitted,

P.  MICHAEL PATTERSON
United States Attorney

PAMELA A.  MOINE
Assistant U.S. Attorney
Florida Bar No.  58810
114 E.  Gregory Street
Pensacola, FL 32501-4972
(904)434-3251

4

210

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing notice has been furnished by certified mail return receipt requested to SADIE MOORE STEWART, 2112 Lewis Turner Blvd., Suite 4, Fort Walton Beach, Florida 32548, this 21st day of March 1996.

PAMELA A. MOINE
Assistant U.S. Attorney

cc: AAA Court Reporters
     205 East 4th
     Panama City, FL 32413
     904/785-0057

5

211

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SAMMY D. BARNES, et al.,       )
                               )
        Plaintiff,             )
                               )
v.                             )
                               )   CIVIL ACTION NO. 94-50372-LAC
JOHN DALTON, Secretary of      )
the Navy,                      )
                               )
        Defendant.             )
                               )
_____)

## ORDER OF PARTIAL DISMISSAL

This is a class action employment discrimination suit. The defendant moves for dismissal, or in the alternative, for summary judgment on all class allegations. (doc. 44). By order dated May 3, 1995 (doc. 85), the court advised the parties it would treat the motion as one for summary judgment. For the reasons below, the court grants the motion and dismisses all class allegations on the merits.

I.   *Background*

Plaintiffs Sammy D. Barnes, Ray C. Dunklin and James Cox filed this Title VII suit on behalf of all black employees of Naval Coastal Systems Station, Dahlgren Division, in Panama City,

FILED ON DOCKET 2-18-96 ecc
(Rules 58 & 79(a) FRCP or 3260(1) & 55 FRCRP)
Copies mailed to: Stewart, Frederick,
Morris & Crowe

DON- 02-61331-004

212

Florida.    The  complaint  alleges  the  defendant  ("the  Navy")
discriminates  against  black  employees  in  the  areas  of  training
opportunities,  promotions,  performance  appraisals,  incentive
awards,  and  disciplinary  actions.   Plaintiffs  seek  $90  million  in
damages.   This  motion  followed.

II.  *Motion for Summary Judgment*

     The  Navy  argues  summary  judgment  should  be  entered  in  its
favor  on  all  class  allegations  because  the  plaintiffs  failed  to
follow  the  procedural  requirements  for  filing  a  Title  VII  class
action.   At  the  outset,  the  court  notes  summary  judgment  motions
can  be  granted  only  when  "the  pleadings,  depositions,  answers  to
interrogatories  and  admissions  on  file,  together  with  the
affidavits,  if  any,  show  that  there  is  no  genuine  issue  of  material
fact  and  that  the  moving  party  is  entitled  to  summary  judgment  as
a  matter  of  law."   Fed.R.Civ.P.  56(c);  Celotex  Corp.  v.  Catrett,
477  U.S.  317,  322,  106  S.Ct.  2548,  91  L.Ed.2d  265  (1986);  Everett
v.  Napper,  833  F.2d  1507,  1510  (11th  Cir.  1987).   An  issue  of  fact
is  "genuine"  if  the  record  as  a  whole  could  lead  a  rational  trier
of  fact  to  find  for  the  nonmoving  party.   Anderson  v.  Liberty
Lobby,  Inc.,  477  U.S.  242,  248,  106  S.Ct.  2505,  91  L.Ed.2d  202
(1986).   An  issue  is  "material"  if  it  might  affect  the  outcome  of
the  case  under  the  governing  law.   Id.   In  ruling  on  a  motion  for
summary  judgement,  the  court  must  take  the  evidence  in  a  light  most
favorable  to  the  nonmoving  party.   Griesel  v.  Hamlin,  963  F.2d  338,
341  (11th  Cir.  1992).   With  this  standard  in  mind,  the  court  agrees

2

summary judgment is appropriate.

To maintain a Title VII class action, the plaintiffs must satisfy two prerequisites. First, they must identify an individual class agent with a cognizable claim; in other words, the class agent must have constitutional standing to raise the claim(s), and he or she must have satisfied Title VII's procedural requirements. Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987), cert. denied, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988). Second, the suit must satisfy the requirements of Federal Rule of Civil Procedure 23; that is, the class agent must be qualified to represent the class in accordance with the four prerequisites of Rule 23(a) and the action must be one of the three types identified in Rule 23(b). Id.

The Navy attacks the first of these prerequisites. Specifically, it contends the plaintiffs have not identified an individual class agent who has complied with Title VII's procedural requirements. In federal sector cases such as this one, Title VII plaintiffs must follow the procedures outlined in 42 U.S.C. § 2000e-16 and 29 C.F.R. § 1614.101, et seq. Under these provisions, plaintiffs may not file suit in federal court until they have first exhausted their administrative remedies within the agency that has allegedly discriminated against them. Grier v. Secretary of the Army, 799 F.2d 721, 724 (11th Cir. 1986). "This requirement is not a technicality; 'rather, it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for

3

214

maintaining nondiscrimination in employment.'" Id. (quoting Kizas
v. Webster, 707 F.2d 524, 544 (D.C. Cir. 1983)).

Accordingly, a federal employee who believes he or she is a
victim of discrimination must first contact the agency's EEO
counselor "in order to try to informally resolve the matter." 29
C.F.R. § 1614.105(a). Such contact must be initiated within forty-
five days of the matter alleged to be discriminatory. 29 C.F.R. §
1614.105(a)(1). If the matter is not resolved within thirty days
after the employer first contacts the counselor, the counselor must
inform the employee of his her right to continue the administrative
process. 29 C.F.R. § 1614.105(d).

Thereafter, the employee may file a formal complaint with the
agency. 29 C.F.R. § 1614.106(a). The agency then has 180 days to
investigate the complaint, after which, it must give the
investigation file to the employee. 29 C.F.R. § 1614.108(f). The
employee may then request either (1) immediate final agency
decision, or (2) a hearing before an administrative judge. 29
C.F.R. § 1614.108(f). Under either approach, an employer who is
dissatisfied with the eventual agency decision may appeal to the
EEOC or file suit in federal district court. 29 U.S.C. § 1614.408.

An employee seeking to advance a class action must take the
added step of filing a formal class action complaint with the
agency and follow the procedures set forth in 29 C.F.R. § 1614.204.
See Gulley v. Orr, 905 F.2d 1383, 1384 (10th Cir. 1990) (noting
that administrative procedures for class claims are "markedly
different" from those for individual claims). If the class agent

4

215

fails to exhaust his or her class remedies, the district court cannot entertain the suit; exhaustion of individual remedies is not enough. Id. at 1385.

In this case, the facts reveal only one of the class agents filed a formal class complaint: Sammy Barnes. On March 14, 1994, he met with an EEO counselor to register an informal complaint regarding the Navy's failure to promote him to Inventory Management Specialist on November 20, 1992. After completing the informal counseling process, Barnes filed a formal complaint on May 10, 1994. A month later, he filed a clarification to the complaint, stating: "The kind of complaint being file[d] is a class action."

As the record makes clear, however, Barnes did not initiate contact with his EEO counselor within 45 days of the matter alleged to be discriminatory, as required by 29 C.F.R. § 1614.204(a)(3) and 29 C.F.R. § 1614.105(a)(1). Instead, he waited 441 days before he consulted anyone regarding the November 1992 promotion. Consequently, Barnes' complaint is time-barred unless the court finds reason to equitably toll the filing period. See Pacheco v. Rice, 966 F.2d 904, 906 (5th Cir. 1992) (failure to timely consult EEO counselor bars claim absent waiver, estoppel or equitable tolling).

The Navy argues no such reasons exist. Because the plaintiffs bear the burden to prove equitable tolling at trial, the Navy need not affirmatively negate or disprove the issue to prevail at summary judgment. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112,

5

1115-16 (11th Cir. 1993) (discussing burdens of proof at summary judgment). Instead, the Navy need only "affirmatively show" a lack of record evidence to indicate the filing period should be tolled. Id. The Navy has met that burden here.

To survive summary judgment, therefore, the plaintiffs must point to some evidence ignored by the Navy or come forward with additional evidence to demonstrate a genuine issue of fact exists on the tolling issue. Id. at 1116-17. Plaintiffs have failed to meet this burden, despite the fact the court gave them extra time to do so. See doc. 85. Additionally, the court has reviewed the file independently and finds no admissible evidence indicating the filing period should be equitably tolled. Accordingly, Barnes' complaint is time-barred as a matter of law and, consequently, so are the plaintiffs' class action claims. Those claims will be dismissed on the merits.

## III. Motion to Strike

In the alternative, the court grants the Navy's motion to strike the class allegations (doc. 89) based on failure to comply with local rules and inadequacy of class representation. Local Rule 23.1 sets forth specific requirements for maintaining class action lawsuits in this court. First, the complaint itself must contain a separate section titled "Class Action Allegations," which contains "detailed allegations of fact showing the existence of the several prerequisites to a class action as enumerated in Fed.R.Civ.P.23(a) and (b)." N.D.Fla.Loc.R. 23.1(A) (emphasis

6

added).   Plaintiffs' complaint does not contain the required separate heading.   Moreover, the complaint contains no factual allegations as to Rule 23's requirements despite the fact the plaintiffs have filed three separate complaints with the court.

The local rule also requires class action plaintiffs to move for class certification "within ninety (90) days after the filing of the complaint." N.D.Fla.Loc.R. 23.1(B).  Plaintiffs filed their original complaint on November 29, 1994.  They did not move for class certification, however, until March 24, 1995--116 days after the complaint was filed.  The court denied the motion because it had already dismissed the complaint for separate pleading defects. See doc. 16.  However, the court allowed plaintiffs leave to amend and instructed, "[u]pon filing their amended complaint ... Plaintiffs can renew this motion...."  Plaintiffs thereafter filed an amended complaint on May 22, 1995 (doc. 17) and a second amended complaint on August 23, 1995 (doc. 24).   However, they never renewed their motion for class certification.

Local Rule 23.1 was designed to help the court manage class action suits in an orderly and efficient manner.  Failure to comply with it warrants dismissal of the class allegations. See Coffin v. Secretary of Health, Ed. and Welfare, 400 F.Supp. 953, 956 (D.D.C. 1975); Walker v. Columbia Univ., 62 F.R.D. 63, 64 (S.D. N.Y. 1973); see also Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1564 (11th Cir. 1987) (affirming denial of class certification partly because plaintiffs failed to file timely motion for class certification).

Moreover, Plaintiffs' failure to comply with the local rule

7

218

reflects poorly on their adequacy to represent the proposed class. A trial court has a special duty in class actions to supervise the litigation and safeguard the rights of absent class members. Guerine v. J&W Investment, Inc., 544 F.2d 863, 864 (5th Cir. 1977). Thus, a court should strike class allegations or deny class certification if it determine the class agents and/or their attorneys cannot provide adequate representation. Id.; Fed.R.Civ.P. 23(c)(4). Failure to move for class certification in a timely fashion is strong evidence of inadequate representation. East Texas Motor Freight System Inc. v. Rodriquez, 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); see also Gaston v. Calhoun County Bd. of Ed., 88 F.R.D. 356, 358 (N.D. Miss. 1980); Flora v. Moore, 78 F.R.D. 358, 361 (N.D. Miss. 1978); Walker, 62 F.R.D. at 64. Based on the plaintiffs' failure to move for class certification, their failure to seek an extension of time to file such a motion, their failure to comply with other requirements of Local Rule 23.1, and their failure to respond to other matters in the lawsuit, the court finds the plaintiffs cannot adequately represent the class for Rule 23 purposes. For this reason as well, the class allegations will be dismissed.

## IV. *Individual Claims*

Having resolved the class issues, the court now turns to the plaintiffs' individual discrimination claims. The Navy has filed motions to dismiss and/or for summary judgment on all such claims. See docs. 44 & 80. The parties are hereby advised that the court

8

will treat these motions as ones for summary judgment. Accordingly, Plaintiffs shall have until August 1, 1996 to submit any additional affidavits, documents or materials authorized to be filed under the Federal Rules of Civil Procedure which they wish the court to consider. See Griffith v. Wainwright, 772 F.2d 822 (11th Cir. 1985). These motions for summary judgment will result in final judgment being entered for the moving party, if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other appropriate evidentiary materials properly filed in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56.

V.   _Conclusion_

Accordingly, it is hereby ORDERED:

1.   The Navy's motion for summary judgment on the plaintiffs' class allegations (doc. 44) is GRANTED.

2.   In the alternative, the Navy's motion to strike the class allegations (doc. 89) is GRANTED.

3.   The plaintiffs' class action allegations are dismissed on the merits. This case shall proceed on the plaintiffs' individual claims only.

ORDERED on this 18th day of July, 1996.

_____
Lacey A. Collier
U.S. District Judge

9



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, D.C. 20036**

David L. Jones,
Complainant,

v.

Gordon R. England,
Secretary,
Department of the Navy,
Agency.

Request No. 05A41142

Appeal No. 01A43030
Agency No. 0261331004
Hearing No. 150-A3-8077X

<u>DENIAL OF REQUEST FOR RECONSIDERATION</u>

David L. Jones (complainant) timely initiated a request to the Equal Employment Opportunity Commission (EEOC or Commission) to reconsider the decision in *David L. Jones v. Department of the Navy*, EEOC Appeal No. 01A43030 (July 7, 2004). EEOC Regulations provide that the Commission may, in its discretion, reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

In the underlying complaint, complainant contended that he was discriminated against on the bases of race (African American), sex (male), age (DOB: 10/26/46), and in reprisal for prior EEO activity in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq.*, when:

    (1)    on February 26, 2002, the agency's Human Resources Director informed him that the process for promotion to the GS-12 grade level required a desk audit; and,

    (2)    on March 8, 2002, his Division Head denied his request for promotion to the GS-12 grade level and told him to contact the agency's EEO Office.

On June 30, 2003, complainant filed a motion to withdraw his request for a hearing before an EEOC Administrative Judge (AJ). On July 30, 2003, the AJ forwarded the complaint file to the

05A41142

agency and requested that the agency issue a final agency decision (FAD). On March 3, 2004, the agency issued a FAD finding that complainant failed to prove by the preponderance of the evidence that he had been discriminated against and our prior appellate decision affirmed this finding. In his request for reconsideration, complainant essentially repeats the arguments presented on appeal and contends that, insofar as the Commission's prior decision found such arguments to be unpersuasive, the prior decision contained clearly erroneous interpretations of fact and law.

After a review of complainant's request for reconsideration, the previous decision, and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. In reaching this conclusion, we note that complainant fails to demonstrate that our prior decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices or operations of the agency. Based on the foregoing, the decision in EEOC Appeal No. 01A43030 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request for reconsideration.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the**

3                                    05A41142

sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

_Carlton M. Hadden_

Carlton M. Hadden, Director
Office of Federal Operations

SEP - 9 2004

Date

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:**

SEP - 9 2004

Date

H. Wood

Equal Opportunity Assistant

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. BOX 19848
WASHINGTON, D.C. 20036

OFFICIAL BUSINESS
Penalty for private use $300

Reference # 05A41142
Andrew L Colvin
908 Wilson Ave
Panama City, FL 32401-2962

SEP 0 9'04

FOR
PRIVATE
USE $300

PB METER
7251969

U.S. POSTAGE

≡ 0.37 ≡

SEP 13 2004